### R. J. FISHER v. WELLWORTH MILLS COMPANY.[1]

June 9, 1916.

Nos. 19,750—(148).

**Sham answer stricken out — plea in abatement.**

    The court in this action for purchase price of goods, manufactured and shipped to defendant upon its order, struck out the answer as sham and frivolous. The answer pleaded in abatement the failure of plaintiff to file the certificate which chapter 271, Laws 1911, requires a person to file who is doing business in the state under a trade name; the answer also pleaded defensive matters. It is *held*:

[1]Reported in 158 N. W. 239.

(1) The showing is clear that the action relates to the enforcement of a contract upon an interstate shipment of goods to which the plea in abatement cannot apply.

(2) From defendant's correspondence concerning the controversy it clearly appears that the answer is sham in respect to the denials and matters alleged in defense of the action.

Action in the municipal court of Minneapolis by plaintiff, sole trader as Athens Hosiery Mills, to recover $283.12 for goods, wares and merchandise sold and delivered to, defendant. The defense set up in the answer is stated in third paragraph of the opinion. Plaintiff's motion to strike out the amended answer as sham and for judgment as for want of an answer, was granted, C. L. Smith, J. From the order striking out the amended answer and ordering judgment as prayed in the complaint, defendant appealed. Affirmed.

*Kerr, Fowler, Schmitt & Furber,* for appellant.

*Robert M. Works,* for respondent.

HOLT, J.

The court ordered the answer in this case stricken out as sham and frivolous. Defendant appeals.

A party is not entitled to have an answer stricken out as sham, unless its falsity be clearly and indisputably shown, nor as frivolous, unless the facts pleaded do not in any legal view present a defense. That the pleading is verified does not prevent it from being attacked as sham. Towne v. Dunn, 118 Minn. 143, 136 N. W. 562; 2 Dunnell, Minn. Dig. §§ 7658, 7660.

The showing is clear that plaintiff manufactured the goods involved in this suit in the state of Tennessee upon a written order given by defendant, a domestic corporation doing business in Minneapolis, this state, to plaintiff's sales agent in New York, which order was received and accepted by plaintiff July 27, 1914. The goods were shipped to defendant at Minneapolis. This action was brought by plaintiff to recover the agreed price. Defendant pleaded in abatement the failure by plaintiff, doing business in this state under a trade name, to file the certificate called for by chapter 271, p. 376, Laws 1911. It is beyond controversy that the goods here involved constituted interstate commerce, hence this ac-

tion to recover their purchase price may be maintained, notwithstanding plaintiff may have been doing business in this state under a trade name without having filed the certificate mentioned. Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 150 N. W. 790.

Defendant admitted giving the order, but alleged that the goods should be shipped to it during the season of 1915 as ordered and directed, and not otherwise. There are allegations in respect to a failure to furnish samples on time, but after samples were furnished defendant gave shipping directions, thereby waiving any default as to samples. It is also alleged that the order was canceled by defendant on January 9, 1915, and by plaintiff on May 24, 1915. Whatever transpired between these parties in respect to the cause of action or the defense is in writing. If it should appear clearly from defendant's correspondence that the answer is sham, it was rightly stricken. On November 28, 1914, defendant wrote plaintiff: "Referring to our order of July 24th for five cases of our style 225, we wish you would deliver one case of each color about March 1st and another case of black about April 1st. We want you to be sure to have these goods all stamped just as ordered with protek-to on foot put up in dark green boxes as per samples sent you with cardinal edge." No word passed subsequently until January 9, 1915, when defendant writes: "Since taking our inventory we find that we are quite heavily overstocked on certain numbers that have not been selling well, and will have to ask you to cancel the following: (describing the order here involved) We cannot handle these goods at this time. Please confirm and oblige." Plaintiff at once answered to the effect that since he had manufactured these goods specially for defendant, having theretofore ceased making goods of the description ordered, the order could not be canceled. Defendant recognized that it lacked the right to cancel the order, for under date of January 18, 1915, it claims to have written plaintiff's sales agent: "We will appreciate it very much, gentlemen, if you can arrange this matter with your mill to take these goods off our hands * * * If this cannot be done, the only thing we can ask you to do is to hold them back until we can arrange to dispose of them and order them out * * * At best, we couldn't order these goods out until later in the season and we want you to disregard shipping dates originally given." Under date of March 19, defendant writes: "It is not to be expected that you are going to fire

all of the goods at them in one bunch on the original shipping date, knowing as you did, that we wanted to cancel them. You could at least have accomodated us by holding these goods back until we could use them, and that is just exactly what we wrote you to do in our letter of January 18th which you say you didn't get * * * Both you and the Athens people knowing that we were anxious to cancel these goods or at least have them held up, it wasn't necessary for us to specifically state that we wanted them held back until later if we couldn't cancel them." This letter plaintiff denies having received, and shipped the goods, February 25, 1915, forwarding at the same time invoices, the invoice for one box being billed as of April 1. Upon receipt of the invoices and on March 6, defendant, after stating that it expected plaintiff to hold up delivery since he refused to cancel the order, continues: "We shall be obliged to charge the storage up to you under the circumstances and pay for them when needed." Defendant's draymen received the goods from the carrier, and when defendant learned that this had been done it stored the goods in the name of plaintiff, and on March 22 sent him the warehouse receipt saying: "When we are able to use these, we will notify you and you can release them from the warehouse." Plaintiff at once returned the receipt to defendant, for under date of April 2 defendant writes: "We are in receipt of your rather threatening letter of Mar. 30th returning warehouse receipt," etc. Without giving any effect to plaintiff's showing where it disagrees with that of defendant, it seems clear from the latter's written admission that the order was not canceled before the goods were shipped; that the shipment was made according to defendant's direction of November 28; that the carrier delivered the same to defendant, and that the latter had no legal right to either refuse or return them, the goods having been specifically manufactured for this order.

As to the claim that plaintiff himself canceled this order, we are clear that by his letter of May 24 he did not intend to cancel any order upon which shipment had theretofore been made, and defendant was not warranted in construing that letter into a cancelation of this order. The order must be affirmed.